UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 18-CR-80054-ROSENBERG

UNITED STATES OF AMERICA

        *Plaintiff,*

v.

GABRIEL JIMENEZ,

        *Defendant.*
_____/

## GABRIEL JIMENEZ'S RENEWED REQUEST FOR MOTION FOR COMPASSIONATE RELEASE

Gabriel Jimenez, through counsel, hereby renews his request to reduce his sentence to time served with a period of home detention as a special condition of his supervised release. On September 18, 2020, Mr. Jimenez filed his initial motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which, as amended by § 603 of the First Step Act of 2018, permits compassionate release under "extraordinary and compelling circumstances." [D.E. 53][1].   This Court denied the motion without prejudice citing Mr. Jimenez's failure to exhaust administrative remedies provided for in Section 3582(c)(1)(A).   At this time, Mr. Jimenez has

---

[1] Mr. Jimenez incorporates that filing herein.

exhausted his administrative remedies, has additional reasons and authority for release, and therefore renews his request for release.

## I.   Background

Mr. Jimenez was sentenced to 36 months.  He self-surrendered on June 28, 2019.  His projected release date is January 15, 2022.  This means Mr. Jimenez has a little less than one year remaining on his sentence.  It also means that he has served more than half of his sentence.

Following this Court's Order, undersigned counsel resubmitted Mr. Jimenez's request for compassionate release to the warden and administrators at Moshannon Valley Correctional Institution.  The prison confirmed receipt.  *See* attached Email exchange attached hereto as Exhibit 1.  On December 9, 2020, L.J. Oddo, a facility administrator, denied Mr. Jimenez's request for compassionate release because Mr. Jimenez is subject to a detainer.  *See* Correspondence from Mr. Oddo attached hereto as Exhibit 2.

Because the Department of Justice has established a uniform position that "a defendant can file a motion for compassionate release in district court 30 days after requesting relief from the Warden, even if the Warden denies relief within the 30 days"—that is, that the inmate is not required to file or exhaust an administrative appeal.  *See US v. Woodson*, 1:13-cr-20180-CMA, ECF 402 (S.D. Fla.), Mr. Jimenez's Motion is now ripe for review.

2

## II.     The Conditions of Mr. Jimenez's BOP Incarceration Foster the Spread of COVID-19 and Put Mr. Jimenez in grave danger.

Mr. Jimenez is powerless to take the preventative self-care measures directed by the CDC for his high-risk group to remain safe from COVID-19 infection.  He cannot self-quarantine or partake in social distancing in his prison facility.  He is housed in a community dormitory environment that beds 45-50 inmates with "quad"-style cubicles, each housing 2 to 3 inmates, a few feet apart from each other, with one common washroom on each floor that is used by multiple inmates at a time.  There are also community spaces where inmates and prison staff gather, including the dining hall, where there are tight lines and close quarters for seating, laundry facilities, medical areas, and the small library.  The inmate telephones are clustered closely together as are the inmate computers.  There is no ability for inmates to disinfect anything prior to use.  These high-density areas are precisely the kind of spaces that have caused the alarmingly high-spread rates of COVID-19 elsewhere in the country.  For example, hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content.[2]  Prisons are petri-dishes and create the ideal conditions for the

---

[2] Keri Blakinger and Beth Schwarzapfel, "How Can Prisons Contain Coronavirus When Purell is Contraband?" *ABA Journal* (March 13, 2020) available at

virus to spread.  All these circumstances make Mr. Jimenez vulnerable and a perfect candidate to serve the remainder of his sentence on home confinement.

Worse, today, Mr. Jimenez was informed that Moshannon Valley Correctional Institute will close in the next sixty-days and all inmates will be transferred to a different prison.  The transfer will consist of Mr. Jimenez being chained to other inmates without regard to social distance for long bus rides.  The transfer will also consist of stays at federal detention centers or overcrowded county jails where he will be clustered together with other inmates and not necessarily his travel companions.  Depending on Mr. Jimenez's destination, the travel process can go on for days exposing Mr. Jimenez to COVID-19 during each bus ride and each stop.  Given Mr. Jimenez's co-morbidities, including his weight, history of heart disease, and diagnosis as pre-diabetic, the process of transferring Mr. Jimenez could be deadly.

### III.    Mr. Jimenez is eligible for compassionate release

As a preliminary matter, non-citizens—removable or not—are eligible for compassionate release. The compassionate release statute does not restrict relief to individuals who are legally present in the United States. *See* 18 U.S.C. § 3582(c)(1)(A). Neither does the Sentencing Guidelines' advisory policy statement

---

http://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

on compassionate release. *See* U.S.S.G. § 1B1.13. Because § 1B1.13 has not been updated to reflect the First Step Act's expansion of compassionate release under § 3582(c)(1)(A), several courts have determined that the policy statement on compassionate release, while helpful, does not strictly constrain the Court's determination of "extraordinary and compelling reasons" for § 3582(c)(1)(A) motions filed after the First Step Act. *See United States v. Hope*, No. 90-cr-06108-KMW, DE 479:3-5 (S.D. Fla. Apr. 10, 2020) (collecting cases agreeing that courts independently decide what constitutes "extraordinary and compelling," reasons under-post FSA § 3582(c)(1)(A)(i)).[3]

Even the BOP Program Statement— which also does not bind the Court—is silent as to immigration status, stating only that the existence of any detainer is a "factor" to be considered, and explained, if release is recommended. *See* BOP Program Statement 5050.50(7) & (8); *see also United States v. Brown*, 2020 WL

---

[3] *See also United States v. Redd*, 2020 WL 1248493, *6 (E.D. Va. Mar. 16, 2020) (§ 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants, and therefore "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'); *United States v. Bradshaw*, 2019 WL 7605447, *3 (M.D.N.C. Sept. 12, 2019) (noting that "there is no policy statement applicable to a defendant's motion for compassionate release which constrains the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under §3582(c)(1)(A)(i)"); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."); *Coleman v. United States*, 2020 WL 3039123, at *2 (E.D. Va. June 4, 2020) ("U.S.S.G. § 1B1.13 is now outdated following the passage of the First Step Act, which allows individuals to petition the district court directly with-out clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A).").

2091802 (S.D. Iowa Apr. 29, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role. Thus, the Director's prior 'interpretation of 'extraordinary and compelling' reasons is informative,' but not dispositive.") (internal citations omitted). Accordingly, courts across the country have granted compassionate release to non-citizens, including individuals subject to deportation.

As such, despite the prison's claim to the contrary, Mr. Jimenez's immigration status as a Venezuela national does not bar him from relief. *See United States v. Arenales-Monroy*, 16-CR-20374-KMW, DE47 (S.D. Fla. June 18, 2020) (granting unopposed compassionate release to an undocumented defendant "so that a pending detainer may be executed by" ICE); *United States v. Reyes-Cantu*, 18-CR-934, DE32 (S.D. Tex. July 14, 2020) (granting compassionate release for an undocumented defendant subject to an ICE detainer following a conviction for an aggravated felony where extraordinary and compelling reasons were found due to defendant's serious health conditions).[4]

---

[4] *See also United States v. Reyes-De La Rosa*, 5:18-CR- 55, 2020 WL 3799523 (S.D. Tex. July 7, 2020) (releasing undocumented defendant convicted of illegal re-entry despite ICE detainer, with no opposition from government given defendant's health conditions, the unavailability of home confinement, and the nonviolent nature of his underlying offense); *United States v. Reyes-Flores*, 12-CR-132, DE 112 (E.D.N.C. July 2, 2020) (releasing undocumented defendant convicted of an aggravated felony, based on a finding that extraordinary and compelling reasons exist due to his age at 72 years old and terminal illness); *United States v. Kalkat*, 17-CR-0022-WFN-1, DE 327 (E.D. Wa. July 6, 2020) (releasing undocumented defendant who is a Canadian citizen subject to deportation upon release from BOP custody); *United States v. Gonzalez*, 10-CR-172-BO, DE 156 (E.D.N.C. April 13, 2020) (releasing undocumented defendant convicted of an aggravated felony,

IV.    **The Relevant § 3553(a) Sentencing Factors Warrant Allowing Mr. Jimenez to Serve the Remainder of His Sentence on Home Confinement**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. §3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).  Here, Mr. Jimenez supplements the factors cited in his initial motion for compassionate release [D.E. 53], adding that the prison sentence Mr. Jimenez is serving is not the prison sentence that the Parties envisioned when he was sentenced, Mr. Jimenez's prison sentence was not meant to be a death sentence, when combined with the other Section 3553(a) sentencing factors, clearly warrant relief.

1. *The prison sentence that Mr. Jimenez is serving is not the prison sentence that he was sentenced too.*

When Mr. Jimenez was sentenced and designated to a prison, he was sent to a minimum-security prison.  The only reason Mr. Jimenez was not designated to a camp is due to his immigration status.  Mr. Jimenez was designated to a minimum-

---

with an ICE detainer, in light of compelling factors including his age at 62 years, serious heart condition, and service of a significant portion of the sentence); *United States v. Bennett*, 05 CR. 1192-1 (NRB), 2020 WL 2539077, at *2 (S.D.N.Y. May 18, 2020) (granting a motion under Section 3582(c)(1)(A) as to a defendant with ICE detainer); *United States v. Guzman Soto*, 18-CR-10086-IT, 2020 WL 2104787, at *3 (D. Mass. May 1, 2020) (granting compassionate release where defendant was "subject to an immigration detainer whereby, upon release, he w[ould] be taken into custody by [ICE] for removal").

security prison for several reasons, including his age, the nature of his conviction, and his immigration status. Due to COVID-19, Mr. Jimenez has been subjected to 23-hour daily lockdowns, no ability to see his family, limited ability to communicate by telephone or email with his family or others, and almost no time outside. Even for meals, Mr. Jimenez is confined to his cell. These are not the prison circumstances that this Court and the BOP envisioned when Mr. Jimenez was sentenced and designated to a minimum-security prison. There is no end in sight to the lockdown or other restrictions because the BOP has been unable to control COVID-19 within the prison walls and is unable to protect prisoners. Recently, because of anticipated riots and security concerns, the BOP has further increased restrictions.

In addition to the restrictions required by COVID-19, Mr. Jimenez has already been subjected to one transfer, which required a 45-day quarantine on the front and back end of the transfer. These quarantines place further limitations on Mr. Jimenez's liberties in the prison and relegate him to almost solitary confinement. These conditions should factor into the Court's analysis when deciding whether to grant Mr. Jimenez's motion for compassionate release.

   2. *Mr. Jimenez's prison sentence was not meant to be a death sentence.*

Mr. Jimenez's prison sentence was never intended to be a death sentence. Unfortunately, given Mr. Jimenez's current medical conditions coupled with the certainty of a second transfer, he could die in prison. Mr. Jimenez could die in

prison without seeing his children a last time, including one child that already lost his mom to cancer. This is another factor that weighs in favor of granting Mr. Jimenez compassionate release.

   *3. Mr. Jimenez has a stable release plan.*

   Mr. Jimenez is fortunate to have a stable home to be released to, with family who are willing and able—both mentally, physically, and financially—to assume responsibility for him.

   In this case, a reduction or modification of Mr. Jimenez's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Jimenez, warrant compassionate release.

## V.   CONCLUSION

   Having demonstrated the current and needs of his family, in conjunction with his own increased risk, this Court should GRANT Mr. Jimenez motion for compassionate release.

   Undersigned counsel has communicated with government counsel AUSA Paul Hayden regarding relief requested in this motion. AUSA advised that the government opposes the motion.

Date: January 21, 2021

Respectfully submitted,

TACHE, BRONIS, CHRISTIANSON AND
DESCALZO, P.A.
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Telephone:   (305) 537-9565
Facsimile:    (305) 537-9567

By:___*/s/ Marissel Descalzo*_____
        Marissel Descalzo
        Florida Bar No. 669318
        mdescalzo@tachebronis.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with

the Court under seal and served on all counsel of record this 21st day of January

2021.

By: __*/s/ Marissel Descalzo*_____
        Marissel Descalzo, Esq.

10